Good morning. Good morning. May it please the Court, I'm Dan Lindahl, representing the appellant, BancInsure, Inc. This is an insurance coverage case where the issue is whether BancInsure's insurance policy issued to Security Pacific Bank provides coverage for claims the FDIC, as receiver for Security Pacific, wishes to pursue against former officers and directors of the bank. There are two overarching issues that I'll address today as we argue for the Court to reverse the judgment of the District Court and remand with directions for entry of judgment in favor of BancInsure that there is no coverage. The two issues are these. First, there is the insurance coverage issue and whether the policy's receiver and successor exclusion bars coverage for the claims by the FDIC. And I'll argue today that, in fact, that exclusion unambiguously precludes coverage and is not rendered ambiguous nor superseded by either the shareholder derivative exception to the exclusion or by the endorsement that deleted a regulatory exclusion from the policy. The second issue involves notice and whether the insureds here complied with the notice of potential claim provision by giving BancInsure, within 30 days after the policy expired, a detailed notice of circumstances that might produce a claim in the future. Maybe I don't understand this exactly, but is part of the argument from the FDIC that there is some sort of receiver plus and that in addition to being a regular receiver, stepping into the shoes of the bank, that they also have a regulatory component to their existence and that they could wear more than one hat. And in this case, they're wearing, besides just being a receiver and stepping into the shoes of the bank, that they also have some regulatory aspect to their duties, and that's why they're taken outside of the language of the insurance policy. I'll give you my best shot at understanding what the FDIC has argued. And because the FDIC's position evolves over time, it's different in this case than it was, for example, in the Hawker case, which this court is going to get here in a few months, coming up from the Eastern District of California. But as I understand it, the FDIC's position is, yes, we are a receiver. They can see that. And we're a successor, and we bring these claims as a receiver. But if you look at us in a different angle and in the right light, we also are sort of like a shareholder because under FERIA, among the rights consolidated in the FDIC as a receiver are the rights of shareholders. And as this court explained in the Pareto case, the purpose of that statutory provision is very sensible. We're going to gather all of the rights, all of the claims, all of the ability to pursue assets from this failed bank in one entity, the FDIC. So you don't have a lawsuit here and here and here and here competing for the same assets, which frankly are rarely sufficient to answer for the losses. So that's the FDIC's position, is that we're a receiver, but we're kind of something else too. But they are a receiver. And I want to emphasize, we emphasized it in our brief, but I want to emphasize today, the policy language we're dealing with here is unique to Bank Insure. These battles between the FDIC and insurance companies have been going on a long time, all the way back certainly to the last catastrophic banking crisis at the end of the 1980s. And the cases the FDIC relies on and the insured versus insured exclusions that issue in those cases don't have our wording. That was what was so persuasive to the Tenth Circuit Court of Appeals when it decided what we've characterized as the Bank Insure-Columbian Bank case decided just in time for our reply brief. And so, of course, that's where we're at. Is that McAfee? Yes. It was – that's how it was known in the trial court. In the Court of Appeals, it's Bank Insure versus FDIC, decided last August by the Tenth Circuit Court of Appeals. It is as close to – I understand this court isn't bound by the Tenth Circuit decisions. However, it's certainly instructive that the Tenth Circuit looked at these exact same arguments. Does the shareholder derivative exception render the meaning of receiver ambiguous? And the Tenth Circuit said, no, receiver doesn't. There's no ambiguity there. It means what it means. It's a word of common meaning, and the FDIC admits it's a receiver. So it looks at does deleting the regulatory exclusion somehow render ambiguous or even supersede by sub salientio the receiver exclusion? And the Tenth Circuit said, no, it doesn't. There is no inconsistency between removing the regulatory – do you have a question, Your Honor? You sound like you're – I want to get a little bit to the facts here. Yeah, of course. Prior to the time that you entered into the settlement agreement, which resulted in this declaratory judgment action, Correct. the FDIC presented you with a draft complaint. Correct. Is there anything in the draft complaint that would indicate that they were wearing their regulatory hat rather than just stepping into the shoes of the bank? Well, I'm not sure I understand the question except to the extent it's just a lawsuit that these people did a bunch of bad things. They're saying that the directors did a bunch of bad things. Right. They are bringing the same claims the bank would have brought had the bank elected to sue these directors and officers. And if the bank had presented you with this same complaint? Indisputably excluded from coverage. Okay. FDIC makes no contention otherwise. Mr. Lindahl. Yes. There was an unspoken assumption in Judge Eaton's question that I'm interested in. The FDIC has regulatory power over banks, correct? Does it have regulatory power over insurance companies? Does the FDIC? Yes. Your Honor, I don't know the answer to that question. You don't know of any basis to say that it does or doesn't? I do not as I stand here, but that's a function of my – Because I was wondering about Judge Eaton's statement that the FDIC is a receiver plus because it has regulatory powers, but I was just wondering if the regulatory powers extended to insurance companies. Oh. And I wondered if you could – I'm certainly not aware that its charter extends to insurance companies. Go ahead. Pardon me for interrupting. Again, going back to where we were, the interesting thing as I stand here before you, and we lost in the district court. Central District of California ruled against us and denied our summary judgment. Every other court that's considered these arguments, every other court, has gone with us. It's a district court case, but we cite and rely on the Davis decision from the Northern District of Georgia. Same set of arguments. What does the shareholder derivative exception mean here? What does the receiver exclusion mean? What is the effect of deleting the regulatory exclusion? Does that somehow trump the receiver exclusion and render it ineffective? Every other court has gone our way. How many courts would that be? Well, specifically, there's the Tenth Circuit with bank insurer, the Columbia Bank case, and then the Northern District of Georgia in the Davis case, and the Eastern District of California in the Hawker case. So three cases. Yes. Two of which are district court cases and one of which is a Tenth Circuit case. Yes, Your Honor. Okay. All right. Yes, Your Honor. When you say every other case, that raises in my mind that there are a number of cases. Well, you're right, and I don't mean to imply that there are 20, but when there are three involving, well, two of them involve an identical policy form, the Davis case and the Tenth Circuit case. The Hawker case is a similar form, but not in every respect. It doesn't have the deletion of the regulatory exclusion. But, you know, when this policy gets litigated, the courts are consistent, and, you know, again, I understand you're not bound by the Tenth Circuit. However, this company, Bank Insure, is in receivership in Oklahoma, and the court down there is going to have to sort out some of these issues. And I think consistency from the courts of appeal will help that court versus inconsistency in an inter-circuit conflict. You want to discuss the notice issue? I do, Your Honor. That is an independent and alternative grounds that we assert for why there is no coverage. Didn't Security Pacific tell you all the circumstances of which it was aware before it shot down? It may well have told us everything of which it was aware, but that doesn't mean that they complied with what they had to tell us, because what is the purpose? And I think this is important, and I probably didn't do a good enough job in my brief of talking about this. What is the purpose of these notice provisions? You know, it's a claims-made policy, so timing is important. Under the FDIC's theory of notice, an insured, on the last day of the policies in effect, could come to the insurance company and say, we did some things wrong, there was some mismanagement, there might be some claims, that's all we know right now, but it's our intention to give you notice. And if that is deemed notice, they have coverage into perpetuity if a claim ever does arise. So what this provision, and bank insurers' notice provision, is pretty rigorous. What was missing from the notice that they gave you? The biggest thing that was missing was notice of specific wrongful acts. There is no specific loan, incident, transaction, anything. All they give us are the nine very generic criticisms the FDIC listed in its order, its cease and desist order. The very same type of order that the district court in the Davis case said, those are just generic criticisms. That's just essentially vague and general mismanagement accusations. So you wanted them to give you notice that on such and such an occasion the bank loaned money without adequate capital. Or, yes, at least identify these are troubled loans. These might lead to a claim. They're in the possession of this knowledge, and if you're going to get coverage for that claim, that wrongful loan, or even some kind of specific wrongful act, identify it for us. Otherwise, as I say, at the end of a policy of this type, you could get coverage into perpetuity by saying, we did some things wrong. We know some people are unhappy. We made some mistakes. Some things might go wrong. We're tendering it to you. Please provide coverage. I want to reserve the remainder of my time. If there's any further questions, I'll certainly answer them now. Otherwise. All right. Thank you, Counsel. Thank you. Thank you. Good morning. May it please the Court. Michelle Agnabeny on behalf of the Federal Deposit Insurance Corporation as receiver for Security Pacific Bank. The insured versus insured exclusion, and I'll use that terminology since that's the more common way that that type of exclusion is referred to, has to pass a very high bar to apply. Bank insurers' reading of the exclusion has to be the only reasonable reading. If there is a reasonable alternative reading, the ambiguity has to be construed in favor of coverage. So what's the ambiguity here? The ambiguity is revealed by reading the policy as a whole. Although the insured versus insured exclusion refers to a receiver of the bank or of the holding company or of any of the individual insureds, the regulatory exclusion, which specifically refers to deposit insurance organizations in any capacity, including as receiver, was deleted from the policy, and a new sublimit was delimited in or was described in the endorsement indicating that coverage was restored for the formerly excluded actions. Is there anything in the draft complaint that you presented before the settlement agreement was entered into that would indicate that there was a regulatory aspect to your claims at all? Well, I don't think that there is a regulatory aspect to our claims, if by that you mean that there was an administrative action that the FDIC was bringing or an enforcement action. All of the claims are claims that the bank could have brought against its directors. And if the bank brought those claims against its directors, the policy wouldn't have been implicated. So I'm trying to figure out how it is that the policy is implicated just because you've taken over as the receiver. So I'd point, Judge Eaton, I'd point you to Paragraph 1 of the draft complaint, where we say that the action is brought by the FDIC in its capacity as receiver. The FDIC is successor to all claims originally held by Security Pacific, and of any stockholder, member, account holder, depositor, officer, or director of such institution. And so I think you're going to direct you to your claims for relief, none of which, as far as I can tell, have anything to do with anything other than what they, what the bank could have brought against its directors. Those are also claims that the shareholders could have brought in the form of a derivative action. Did you ever give notice to the board of directors, pursuant to California Corporation Code, that you wanted to have them follow or prosecute the individual members of the board of directors as is required in the derivative action? Well, that wouldn't have been possible in this situation because by the time the FDIC comes on the scene, the bank is closed and the board of directors is no more. So that's why. So you would have to give notice to yourself. Well, I suppose so. But we don't claim that we're actually bringing a derivative action, but the types of claims that we're bringing are claims. Can you possibly bring a derivative action if the California Corporation Code requires notice to the board of directors to pursue these individuals, refusal by them to do so, and then stepping in as in a derivative action? I mean, under these circumstances, how do we know that you can even bring a derivative action? Well, we have not maintained that we are bringing a derivative action. I agree with that. And I think that, you know, all claims that could be brought as a derivative action are vested in us. How do you horseshoe that into saying then the exclusion doesn't apply? I think that our primary argument for why the exclusion doesn't apply is that the regulatory exclusion endorsement deleted the regulatory exclusion. That explicitly refers to the FDIC not just in its regulatory capacity, but in any capacity, including as receiver. And so the regulatory exclusion endorsement does not just restore coverage for claims brought by the FDIC in its regulatory capacity. It defines agency to include deposit insurance organizations in any capacity, and it explicitly references including as receiver. This exact argument was made in the McAfee case. Yes. I mean, what you're saying is, rule for me and create a circuit split. This would not create a circuit split, Judge Bea, because Kansas law was more constraining than California law. And the Tenth Circuit expressly noted that. It noted that other states might come out differently, but it felt constrained by Kansas law because it did not find any evidence in Kansas law that deletion of an exclusion by an endorsement could give rise to an inference of coverage. California law is different. There are California cases cited in our brief that say that deletion of an exclusion by an endorsement sets the reasonable expectation of coverage for the insured. And I'd refer you to the American Alternative Insurance case and the Woods case, both by the California Court of Appeal. And so I think that the Tenth Circuit case is very limited in its application here because Kansas law is so different. Another way in which the Tenth Circuit was constrained but this Court is not is that Kansas follows the four corners rule for contract interpretation. I'm sorry. But so does California. If you look at Bank of the West, the first thing we do is to look at the plain meaning of the words. Only if there is an ambiguity do we go to the reasonable expectation of the promisee. Correct? Well, California is slightly different because, yes, you have to look at the words of the contract. But California also demands, and I believe it's the Pacific Electric, Pacific Gas Electric case. I'm sorry, I can't remember the California Supreme Court case off the top of my head, but it's cited in our brief, says that there could be a latent ambiguity. And so the court has to provisionally look at extrinsic evidence, even if the language on the face of the contract appears clear, to determine whether there's an ambiguity. You can't do that in Kansas. California, the court is compelled to do that. I respectfully disagree with you. You're talking about the Pacific Gas Exchange v. Rage case. That was back in the 1960s and 70s. Since then, Bank of the West has interpreted insurance contracts strictly out of the Civil Code of California, Section 1635, at seek. And the first one is the plain meaning rule. Only if an ambiguity in the plain meaning of the statute arises. Now, yes, the regulatory amendment of the amendment that took the regulatory exclusion out referred to FDIC. But FDIC here is a receiver, and the insured v. insured exclusion remains in there. So the fact that an exclusion, there can be two exclusions, one specifically naming the FDIC and one naming the receiver, the FDIC, as receiver. If you get rid of one, you're arguing that means that receiver doesn't apply anymore to FDIC. Is that your argument? I think that the presence of the regulatory exclusion endorsement at least gives rise to an ambiguity as to whether the generic term. Does the word receiver change meaning because FDIC is no longer excluded by the amendment to the regulatory exclusion? I think that in the original policy there were two exclusions. One referred to generic receiver. The other referred to agencies, including the FDIC in its capacity as receiver. The presence of these two exclusions, you have to think, was the generic term receiver meant to include the FDIC as receiver when there's a specific exclusion addressing that? Who knows? Then that exclusion is removed. It's what we call a built-in suspenders contract. You say it twice. Perhaps. But the Woods case, there was also a partial conflict between exclusionary language and an endorsement deleting other exclusionary language. Both referred to certification requirements by pilots. Even though the endorsement covered a whole range of things, restoring coverage for a whole range of things by removing an exclusion, which is what the regulatory exclusion endorsement does here, it found that that partial conflict with the new exclusionary language, it should be construed in favor of coverage, because a layperson reading that policy would be led to believe that they had coverage when a specific endorsement was added to remove exclusionary language that would seem to apply to their situation. And so I think that that's the same situation that we're presented with here. There is a conflict in the policy. It was bank insurers' responsibility to make sure any exclusionary language is clear and a layperson could understand what the scope of coverage was that they were getting. And although I'm standing here representing the FDIC, it's important to note that we are the assignee of the individual directors and officers' claims. This is coverage that was promised to the bank and its directors and officers, individuals who are serving on the board and as management of the bank. So it's not just me as, you know, government agency here. The coverage that we're talking about is coverage that was promised to individuals. But it was promised to those individuals. If the bank itself, if you weren't the receiver, if the bank itself had brought the lawsuit that you presented in your draft complaint, could they implicate the policy? If the bank itself had, the exclusion would clearly apply. The bank is not a regulatory agency. There would be no conflict like the conflict presented when the FDIC is involved. Okay, so it's your argument that because you're a regulatory agency, suddenly, even though the lawsuit otherwise wouldn't implicate the policy, suddenly it does implicate the policy. Well, yes, by the terms of the policy itself. Because you're not a receiver. You are, as I said, a receiver plus. Right, exactly. And, you know, unless there are any further questions on the coverage, I can move to the notice point if you'd like me to discuss that. So I think that the bank insurer is trying to avoid the aspect of the notice provision that permits notice of circumstances that may give rise to a claim. They're demanding a level of specificity here that you simply couldn't satisfy unless you actually had the draft complaint in hand. But the policy allows the insureds to provide notice of circumstances, and that's what the insureds did here, in repeated letters to bank insurer as soon as they were aware that claims could arise. They provided as much detail as they had at the time. They were in repeated contact with bank insurer and its adjuster. Nobody ever asked for any additional information. And it just seems that the level of specificity wouldn't have been possible and isn't what the policy demanded. They ticked all the boxes of the elements that are required in the notice provision. And also, just to address briefly, the Davis case, which addressed the notice and the coverage issue, we think that that case was wrongly decided. The FDIC was not a party to that case. Certain basic arguments, such as there is an ambiguity in the policy, were not presented. Also, with respect to the notice issue, the court relied on these constructive notice cases that bank insurer also relies on, which just aren't really relevant here because actual notice was provided here, and they ticked all the boxes. So I think that the notice issue is pretty straightforward, but I'd be happy to answer any questions. And just to sum up, so I think that it's important to keep in mind that the requirement to apply exclusionary provisions is that the exclusionary reading has to be the only reasonable reading. If there is any reasonable alternative reading presented, that a layperson could think that they had coverage, that ambiguity means that coverage should be found under the policy. Counsel, what's your response to opposing counsel's observation that the notice that was given was too generic? I don't think that the notice was too generic. I think that the wrongful acts that are listed in the cease and desist order that were included in one of those letters to bank insurer map pretty closely onto the allegations in the complaint. There were specific things about inadequacies in the lending practices of the bank, and that's the core of the complaint. But his point was that you have to give notice of a specific activity and who conducted the activity. Do you think the notice that was given complied with that? Were there any names or any specific transactions that were referenced? Names were included in one of the subsequent emails to bank insurer because they believed that all of the directors and officers could be implicated, and so they did include a list, or I believe they included a list of the directors and primary officers of the bank in that email. In conjunction with particular activities? Well, the activities that they thought would form the basis of a potential claim in the future, and keep in mind that they were just providing notice of circumstances that they thought could give rise to a claim in the future, and that's allowed under the policy. And so those were the directors and officers who were involved in the bank at the time that these wrongful acts that they listed from the cease and desist order were committed. So they thought that the FDIC as receiver would likely bring claims against them, and they noted in excess of the policy limits, so that provides an amount. They thought that, you know, it was going to be a very large claim, at least in excess of the policy limits, against the directors and officers. They provided the names of those people for things related to the wrongful acts in the cease and desist order, and that's what the complaint was eventually based on, was those inadequacies in management, supervision, and the lending practices. What's your response to opposing counsel's argument that such broad notices would allow for potential liability well into the future and does not limit? I don't think that that hypothetical applies here, because this was not just a generic notice. Some of the cases that they cite, the bank simply forwarded, you know, a copy of an administrative order to the insurer, and that was it. But this is not that situation. This situation, they said, we think the FDIC as receiver might bring claims against us because we had these failings that the FDIC has previously notified us about. We admit that, you know, the bank is going to fail, and we have not remedied these things. All of the directors and officers, here are their names, could be implicated and could have claims brought against them. We expect those claims to be in excess of the policy limit, so that provides the amount. So bank insurer had all of the information it would need to reserve for this potential claim. It knew that it could have a claim for in excess of $6 million, and I don't really see how much more information they would need to sort of. And also, just to point out, it's not like bank insurer received these letters and did nothing. They conducted, you know, they assigned a claims number, they assigned an adjuster, they were sending reports to their re-insurers periodically to update the re-insurers about this potential claim. And so it's not like they didn't recognize this as notice. They behaved as if they had received notice. Thank you, counsel. Rebuttal. Thank you, Your Honor. I have a couple of points, but honestly, I want to ask first, is there anything you've heard that I need to address? If you have any questions for me, let's go there first. We're not shy, so. No, I know that. I've been here all morning. I can see that if you have something on your mind. And I also, having been here all morning, know you've been on the bench quite a while, so I don't want to waste your time. If there's anything further you'd like to say. On the notice point, how should we determine the language or define the language circumstances? Do we have some cases that say that circumstances require the pointing out of individual claims? You know, there aren't any, I don't think either side has found any cases, other than the Davis case, which involves this particular policy wording, because each policy has its own unique wording. And we talk about in our reply brief how these notice provisions vary greatly. Some just require, just tell us of an occurrence if you know of one. Others require full details, and bank insurers is of the full detail variety. It's the more rigorous of these types of notices. And so, at a minimum, I think, as the district court in Georgia decided, identify something specific rather than just, you know, one of the, and honestly, I'm not sure if it's the Davis case or another one that said, a lawyer could send in notice saying, by the way, you know, we didn't keep, we didn't have a tickler system and a calendaring system, and we think there might be some statute of limitation problems out there. There's our notice. That's not exactly what happened here, Mr. Lindahl. The letters told you that there were specific claims in the cease and desist order as to certain practices, improper loans, improper oversight, et cetera. So there may have been so many of them that it was impractical to list all of them. Besides, perhaps the bank didn't want to actually list those because they might think that that would be an admission against their own interest later on. So why isn't the notification that they are about to be sued or they might be sued for the practices which are set forth in the cease and desist order sufficient? Because, you know, all we have in the cease and desist order is the regulatory agency saying, comply with the law, do what you're supposed to do. And it's interesting because this is sort of circular here, but like the Davis case and I think the Artley case, the 11th Circuit case we cite in our brief, cite this court's decision, and I believe it's California Union Insurance, a decision not cited in our brief, and so I don't want to talk about it if that's inappropriate, but in this court in that California diversified union insurance, I can get you the citation, talked about merely getting notice, getting a regulator telling you comply with the law or else there might be problems isn't a notice of claim, and that reasoning has been extended in subsequent cases to be it's not even notice of a potential claim. It's simply notice that the regulator is unhappy with your business practices. It is not, however, notice of specific wrongful acts that may give rise to a claim in the future sufficient that your coverage continues in perpetuity, notwithstanding the fact you paid a premium for this discrete period of time. So, counsel, do you take issue with opposing counsel's representation that the language in the draft complaint closely tracked the language in the cease and desist order? I do. I believe the complaint is 84 pages long. It is very comprehensive. It has charts linking each director with the transactions in which they were involved. It describes in detail the loan committee and the various entities within security, the boards and committees within the bank, the role of each, how each contributed to the downfall of this bank, the business policies adopted, the decisions to aggressively pursue loan origination. But there were no, I mean, it wasn't necessarily linked to any specific loans in the complaint. Oh, in the draft complaint that they circulated, the hammer they circulated around, either agree or we're going to file it. It identifies specifically, I think, 18 separate loans, the amounts of the loans, when they're made, as I say, what directors were involved. It is a tour de force of specificity in opposition to the nine generic, you know, manage your loans better in the cease and desist order. Had the specific acts later shown in the draft complaint been communicated by the FDIC to the bank before they closed their doors? You know, my answer is I don't know on this record. However, I think you can fairly infer they were because the FDIC was involved closely with this bank for a long period of time before they finally shut them down. The cease and desist order wasn't the end. It was the beginning of the FDIC's involvement with the bank saying, we can see there's all kinds of problems here. We're going to get involved with you. And the cease and desist order isn't just here's nine things you need to change. It's here's some ways in which you need to alter. So I assume FDIC is saying to the bank, here are real problems with this loan, this loan, this loan, and the way you're conducting business specifically. Is there any evidence in the record that shows that the bank knew of the individual errors which are later in the draft complaint before it closed its doors? Not that I'm aware of. Okay. Unless there's anything else, thank you for your time. All right, thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Eaton